Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMELO R.,<br><br>     **Plaintiff,**<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     **Defendant.** | Civil Action No.: 20-6874 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

  Plaintiff Carmelo R. appeals the decision of the Commissioner of Social Security denying his application for supplemental security income benefits ("SSIB") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner.

**I.  BACKGROUND**

  On February 2, 2017, Plaintiff filed an application for SSIB. (D.E. No. 9, Administrative Record ("R.") at 211–17). He claimed disability as a result of several impairments, including bipolar disorder, HIV positive, hepatitis C, and depression. (*Id.* at 234). Plaintiff's application was denied initially on April 25, 2017, and again on reconsideration on September 5, 2017. (*Id.* at 78–108). On March 12, 2019, an Administrative Law Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified. (*Id.* at 33–77).

  On June 5, 2019, the ALJ denied Plaintiff's application for SSIB. (*Id.* at 13–27). The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment that would automatically render him disabled. (*Id.* at 19–21). The ALJ further ruled that Plaintiff has the residual functional capacity ("RFC") to perform work for which there exists a significant number

of jobs in the national economy.  (*Id.* at 21–26).   More specifically, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds.  The claimant can never work at unprotected heights, work with hazardous machinery, or be exposed to environmental pollutants, or extremes of temperature or humidity.  He requires a sit/stand option where every 45 minutes or so he will sit/stand at will within the work station and he will be off task up to 10% of the day.  The claimant is limited to simple, repetitive and routine tasks with only occasional contact with coworkers and supervisors with no contact with the general public.

(*Id.* at 21–22).  Relying on the vocational expert's testimony, the ALJ found that an individual with the above RFC could work as an addressing clerk (47,000 jobs in the national economy); a press operator (172,000 jobs); and a table worker (463,000 jobs). (*Id.* at 26).  On May 19, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 2–7).  Plaintiff then filed the instant appeal, over which the Court has subject-matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).  The Commissioner opposes.  (D.E. No. 13 ("Opp. Br.")).

## II.     LEGAL STANDARD

### A.     Standard Governing Benefits

To receive SSIB, a claimant must show that he is "disabled" within the meaning of the Act. 42 U.S.C. § 1382(a).  Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  § 1382c(a)(3)(A).  The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

2

of substantial gainful work which exists in the national economy . . . ." § 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four," and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2. If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 416.920(a)(4).

***Step One***. First, the claimant must show that he has not engaged in any substantial gainful activity since the date of his application. 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. §§ 416.110, 416.330, 416.335. If an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 416.920(b).

***Step Two***. Second, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI"). 20 C.F.R. § 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

***Step Three***. Third, the claimant may show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings

3

of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 416.920(a)(4)(iii). If the claimant makes such a showing, he is presumptively disabled and entitled to benefits. If he does not make the showing, he proceeds to step four.

***Step Four***.  Fourth, the claimant must show that, as of the DLI, he lacked the RFC to perform his past relevant work.  20 C.F.R. § 416.920(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If, as of the DLI, the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *Plummer*, 186 F.3d at 429.

***Step Five***.  Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. § 416.920(a)(4)(v).  If the Commissioner finds that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits.  *See id.*

    **B.**    **Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  But the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In this context, "the threshold for such evidentiary sufficiency is not high." *Id.*  Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry.  *Id.* at 1157.  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

4

*Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### III.  THE ALJ's DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of his application, February 2, 2017. (R. at 18).[1]

At step two, the ALJ found that Plaintiff has medically determinable impairments, or a combination of impairments, that are "severe." (*Id.* at 18–19). In particular, the ALJ found that Plaintiff's bipolar disorder, borderline intellectual functioning disorder, and mild degenerative disc disease of the lumbar spine are severe. (*Id.* at 18). But the ALJ also found that several of Plaintiff's impairments were not severe—those being, his history of obesity, hepatitis C, undetectable load of HIV, poly-substance use in substantial remission, and plantar fasciitis. (*Id.* at 19). That said, the ALJ took "the full range of the claimant's impairments, including both severe and non-severe impairments, into consideration in fashioning his [RFC]." (*Id.*).

At step three, the ALJ found that Plaintiff does not have an impairment, or a combination

---

[1] The ALJ appears to have thought that Plaintiff submitted his application on December 20, 2016. (R. at 18). So, too, does the Commissioner. (Opp. Br. at 1). However, Plaintiff's application is dated February 2, 2017. (R. at 211–17). The ALJ's error is harmless because nothing in her decision, or this one, turns on the date of the application.

5

of impairments, that meets or medically equals a listed impairment that would render him disabled as a matter of law. (*Id.* at 19). The ALJ specifically considered listing 1.04 (for musculoskeletal disorders) and listings 12.04 and 12.05 (for mental disorders). (*Id.* at 19–21).

At step four, the ALJ found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds.  The claimant can never work at unprotected heights, work with hazardous machinery, or be exposed to environmental pollutants, or extremes of temperature or humidity.  He requires a sit/stand option where every 45 minutes or so he will sit/stand at will within the work station and he will be off task up to 10% of the day.  The claimant is limited to simple, repetitive and routine tasks with only occasional contact with coworkers and supervisors with no contact with the general public.

(*Id.* at 21–22). In fashioning the above RFC, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 22).  As for his exertional limitations, the ALJ explained that Plaintiff's use of a cane was not prescribed; that there was no significant change in his gait when walking without the cane; that he did not require serious medical intervention for his back; and that his back condition was otherwise mild. (*Id.* at 22–25).  As for his non-exertional limitations, the ALJ explained that Plaintiff's delusions and hallucinations improved with medication; that he has not had suicidal ideations since 2000; that his tendency to become agitated and frustrated was improving; that he generally got along well with others in his facility; and that he was well-oriented. (*Id.*).  With that RFC, the ALJ held that Plaintiff cannot perform his past relevant work. (*Id.* at 25).

Finally, at step five, the ALJ found, relying on vocational expert testimony, that with Plaintiff's RFC, he could perform jobs that exist in significant numbers in the national economy—

in particular, as an addressing clerk (47,000 jobs); a press operator (172,000 jobs); and a table worker (463,000 jobs).  (*Id.* at 26).

IV.     **DISCUSSION**

Plaintiff assigns several errors to the ALJ's decision.  (D.E. No. 12 ("Mov. Br.")).  The Court considers each.[2]

   A.     **Non-exertional Limitations**

As noted, the ALJ found Plaintiff's non-exertional limitations as follows: "The claimant is limited to simple, repetitive and routine tasks with only occasional contact with coworkers and supervisors with no contact with the general public."  (R. at 21–22).  The ALJ also found that Plaintiff "will be off task up to 10% of the day."  (*Id.*).  Plaintiff's challenges to the ALJ's findings are unpersuasive.

*First*, Plaintiff argues there is not substantial evidence supporting the ALJ's conclusion that he can have "occasional" contact with supervisors and coworkers.  (Mov. Br. at 14).[3]  In support, Plaintiff challenges several of the ALJ's factual findings.  For example, he argues that the

---

[2] The Court will briefly dispose of several arguments here.  First, Plaintiff argues that the ALJ failed to consider the effects of his asthma.  (Mov. Br. at 12).  Had the ALJ done so, Plaintiff says, she would have found a more limited RFC.  (*Id.*).  However, Plaintiff does not cite evidentiary support for this argument, and the Court cannot find any indication in the record.

Second, in his moving brief, Plaintiff argues that he satisfies the criteria for listing 12.04.  (*Id.* at 12–14).  The Commissioner dedicated several pages of its opposition disputing this argument.  (Opp. Br. at 10–14).  In reply, Plaintiff says that the Commissioner's responses were "unnecessary since there was no such assertion in Plaintiff's Brief."  (D.E. No. 14 ("Reply") at 1).  Plaintiff goes on to concede that "his severe mental and physical impairments . . . were not of listing level."  (*Id.*).  Accordingly, any argument concerning listing 12.04 is abandoned on appeal.

Third, in his reply brief, Plaintiff makes several new arguments that were not made in his moving brief, including (i) that he satisfies listings 13.03 and 13.04; (ii) that the ALJ minimized the impact of his diabetes mellitus, which causes, he says, symptoms consistent with peripheral neuropathy; and (iii) that the ALJ failed to consider several limitations.  (*Id.* at 1–3).  However, arguments raised for the first time in reply are waived.  *See, e.g.*, *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019).

[3] Besides addressing occasional contact, Plaintiff does not tie his arguments to any other non-exertional limitation found (or not found) by the ALJ.  (Mov. Br. at 14–17).  It thus appears that, as to his non-exertional limitations, Plaintiff only challenges the ALJ's conclusion concerning occasional contact.  Either way, as discussed in this Opinion, Plaintiff's arguments rest on cherry-picking evidence and misrepresenting the ALJ's findings.  Thus, the Court would not be persuaded even if Plaintiff related his arguments to other non-exertional limitations.

record does not support the ALJ's finding that he can live in a communal setting. (*Id.* at 14). The record instead reflects that he has had issues with staff and other patients in his facility. (*Id.* at 14–16). In addition, he argues that his mental functioning is not "generally normal," as found by the ALJ. (*Id.* at 15). Instead, the record shows that he hears voices in his head telling him to assault someone or kill himself. (*Id.*). Finally, he argues that the ALJ should have found his subjective complaints credible—as was found by Dr. Paul Fulford, a state agency medical consultant. (*Id.*). The Commissioner responds that the ALJ recognized Plaintiff's claims concerning his ability to get along with others. (Opp. Br. at 11). But the ALJ found, based on the objective medical evidence and Plaintiff's hearing testimony, that he can generally interact well with others and can thus have occasional contact with supervisors and coworkers. (*Id.* at 11–12). The ALJ, the Commissioner goes on, "applied the appropriate standard in reviewing Plaintiff's subjective complaints" and found the severity of his complaints not credible—a determination that is "'virtually unreviewable on appeal.'" (*Id.* at 14 (quoting *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015)). The Court agrees with the Commissioner.

"Social Security Ruling 83-10 defines 'occasionally' as 'occurring from very little up to one-third of the time.'" *Hewins v. Saul*, No. 18-3989, 2020 WL 6883439, at *6 (D.N.J. Nov. 24, 2020) (quoting *Greene v. Saul*, No. 19-0687, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) (quoting 1983 WL 31251, at *5)). Occasional contact thus concerns the frequency, not the quality, of the interaction. *Id.* And here, substantial evidence—that is, more than a mere scintilla of evidence—supports the ALJ's finding that Plaintiff can have occasional contact with supervisors and coworkers—that is, contact occurring up to one-third of the time. Gary Drake, social worker and therapist, prepared a function report dated February 16, 2017, in which Drake explained that Plaintiff watches considerable television with other residents in the facility where he resides and

8

that, while he at times becomes irritated and agitated, he "is a very nice man." (R. at 244–46). At the hearing, Plaintiff testified that he gets along "somewhat okay" with the people he resides with in his facility. (*Id.* at 52–53). Moreover, Plaintiff testified, and the treatment notes in the record confirm, that his hallucinations and delusions improve when he takes medication. (*Id.* at 67–68 & 556–65). For example, treatment notes dated December 13, 2018, indicate that, after months of medication, there was "no evidence of delusions," Plaintiff "denie[d] hallucinations," and his "[m]ental condition [was] asymptomatic while on med[ication]." (*Id.* at 565). His treatment notes also suggest that his depression, anger, and irritation have seen some improvement over time. (*Id.* at 327 (March 2017: "some progress noted – less depression . . . less angry"); *see also id.* at 556–65).

  Contrary to Plaintiff's suggestion, Dr. Fulford is not tasked with making credibility determinations. Credibility determinations are reserved for the ALJ, and the Court does not disturb those determinations where they are supported by substantial evidence. *See, e.g.*, *Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Crone v. Saul*, No. 18-01507, 2019 WL 5589241, at *11 (M.D. Pa. Sept. 16, 2019), *report and recommendation adopted*, 2019 WL 5569531 (M.D. Pa. Oct. 29, 2019). To begin with, the bar for substantial evidence is "not high." *Biestek*, 139 S. Ct. at 1154. And the bar is even lower when there is a challenge to an ALJ's credibility determination of a live witness. As the Commissioner points out, the ALJ's "credibility determinations . . . are virtually unreviewable on appeal." *Hoyman*, 606 F. App'x at 681 (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Plaintiff "has failed to meet his heavy burden to establish that the ALJ's credibility determination should be reversed." *Id.* at 680–81. After hearing Plaintiff's testimony, and after reviewing all of the medical evidence concerning his mental capacity, the ALJ reasonably concluded that Plaintiff could have occasional contact—that is,

9

contact occurring up to one-third of the time—with supervisors and coworkers.

*Second*, Plaintiff argues that the ALJ should not have credited two agency reviewers—Drs. Michelle Butler and Pauline Hightower—over Dr. Fulford, because Dr. Fulford was the only one of the three who examined Plaintiff.  (Mov. Br. at 17).

However, there is no indication that the ALJ credited Drs. Butler and Hightower *over* Dr. Fulford.  (R. at 24–25).  The ALJ assigned substantial weight to the opinions of Drs. Butler and Hightower.  (*Id.* at 25).  Meanwhile, the ALJ did not explicitly assign a level of weight to Dr. Fulford because he did not provide a "function by function opinion."  (*Id.* at 24).  The ALJ discredited *Plaintiff's claim*—that he had suicidal ideations—which he made to Dr. Fulford, because Plaintiff testified at the hearing that he has not had suicidal ideations since 2000.  (*Id.*; *see also id.* at 69 ("Q Okay. When was the last time you thought something like that? A Back in 2000.")).  As noted, the ALJ was entitled to make this credibility determination.  *See, e.g.*, *Hoyman*, 606 F. App'x at 681; *Horn*, 717 F.2d at 873; *Crone*, 2019 WL 5589241, at *11.

*Third*, Plaintiff argues that the ALJ committed reversable error by equating substantial gainful activity with Plaintiff's ability "to perform his personal needs, use public transportation, or go to a movie."  (Mov. Br. at 16).  In making this argument, Plaintiff relies on 20 C.F.R. § 416.972(c), which says, "[g]enerally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."  (*Id.*).

But the ALJ did not equate substantial gainful activity with Plaintiff's routine household and social activities.  Instead, the ALJ found, at step one, that Plaintiff had *not* engaged in substantial gainful activity since the date of his application.  (R. at 18).  Later, the ALJ relied on his household and social activities to fashion the appropriate RFC for Plaintiff—more specifically,

to find that the record did not support Plaintiff's subjective complaints concerning the persistence and limiting effects of his impairments. (*Id.* at 25). The regulations contemplate precisely that type of analysis. *See* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to your symptoms . . . include . . . [y]our daily activities").

Accordingly, the Court rejects Plaintiff's arguments concerning his non-exertional limitations.

### B.  Exertional Limitations

Plaintiff also challenges the ALJ's findings concerning his exertional limitations. (Mov. Br. at 17–21). His arguments are not persuasive.

*First*, Plaintiff argues that the ALJ questioned his need for a cane and said that one was not prescribed. (*Id.* at 17). On November 2, 2016, Dr. Alexander Stoler, Plaintiff's treating physician, prescribed Plaintiff a cane "as needed." (R. at 422). The ALJ was made aware of this at the hearing. (*Id.* at 57). Yet, the ALJ found "there is no objective evidence that a cane was prescribed or considered medically necessary by a medical source during the period of review." (*Id.* at 22). According to Plaintiff, the ALJ's error requires reversal. (Mov. Br. at 17).

The Court disagrees. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Thus, the appellant must "*explain* [ ] . . . how the . . . error to which he points could have made any difference." *Id.* (quoting *Shinseki*, 556 U.S. at 413). As the Commissioner points out, on December 1, 2016, Dr. Stoler *removed* Plaintiff's cane prescription. (Opp. Br. at 10 (citing R. at 415)). Moreover, the ALJ pointed out that, at an orthopedic consultative examination on August 12, 2017, Dr. Mirseyad Mohit observed that Plaintiff ambulated with minimal gait and that his gait

11

did not significantly change when walking without the cane. (R. at 22 (citing *id.* at 532–33)). Finally, at the hearing, the vocational expert testified that a person with Plaintiff's RFC who also needed a cane could perform work that exists in significant numbers in the national economy. (*Id.* at 73). Accordingly, the ALJ's misstatement concerning Plaintiff's cane prescription was harmless.

*Second*, Plaintiff argues that the ALJ inappropriately considered his failure to receive surgery as a basis to deny him benefits. (Mov. Br. at 17). Because surgery was never prescribed, says Plaintiff, the ALJ cannot fault him for failing to follow prescribed treatment. (*Id.*).

However, the ALJ did not fault Plaintiff for failing to follow prescribed treatment. Instead, the ALJ found that Plaintiff was not as functionally limited as he claimed—in part because his impairments did not require serious medical intervention. (R. at 23). The regulations contemplate precisely that type of analysis. *See* 20 C.F.R. § 416.929(c)(3)(v) ("Factors relevant to your symptoms . . . include . . . [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms"); *see also Bush v. Barnhart*, 279 F. Supp. 2d 512, 520 (D. Del. 2003) (affirming ALJ's determination that the claimant was not disabled in part because "the ALJ noted at the administrative hearing that his condition was never significant enough to warrant surgery, chiropractic treatment, a handicap sticker, a permanent back brace, or traction"), *aff'd*, 97 F. App'x 393 (3d Cir. 2004).

*Third*, Plaintiff argues that the ALJ failed to specify the amount of time that he could stand before needing to sit. (Mov. Br. at 19–20). Instead, the ALJ merely found that, every 45 minutes, he required the option to sit or stand at will within his workstation. (*Id.* at 20 (citing R. at 21)). Plaintiff argues that, without specifically identifying the amount of time he could stand before needing to sit, "the [vocational expert]'s testimony cannot be considered substantial evidence on

12

which to deny [P]laintiff's benefits." (*Id.*).

However, at the hearing, the ALJ explained what she meant by this limitation: "I'm not envisioning somebody popping up and down like a Jack-in-the-box." (R. at 73). Instead, "after about 45 minutes of sitting [the person could] stand, stretch a little bit, and . . . return." (*Id.*). The vocational expert responded, "just to be clear, it was every 45 minutes just a brief break, stand and stretch, without leaving the workstation and off task." (*Id.*). With that understanding of Plaintiff's limitation, the vocational expert testified that he could perform work that exists in significant numbers in the national economy. (*Id.*). Plaintiff does not challenge this determination.

Moreover, even if there was an error, Plaintiff does not demonstrate harm. *See Holloman*, 639 F. App'x at 814. Plaintiff does not specify how long he would need to stand before sitting. Nor does he explain how any particular length of time would entitle him to benefits.

*Fourth*, Plaintiff argues that the ALJ failed to include in his RFC that he would be off task 15% or more during the day and absent from work more than once per month. (Mov. Br. at 20). As Plaintiff points out, the vocational expert testified that such limitations would render him unable to perform work that exists in significant numbers in the national economy. (*Id.* (citing R. at 74)).

However, Plaintiff provides no persuasive basis for the ALJ to include that limitation. Plaintiff says that he "liv[es] in a structured environment with psychiatric treatment on a twice weekly basis" and therefore must be absent from work more than once per month. (*Id.*). But he does not explain, nor does he point to record evidence suggesting, why he cannot structure those appointments around a work schedule.

At bottom, Plaintiff's brief amounts to no more than disagreement with the ALJ's conclusion and thus "falls well short of demonstrating that any reasonable adjudicator would be compelled to reject" the ALJ's conclusion. *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d

Cir. 2020).

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner. An appropriate Order will follow.

Dated: June 30, 2022

                                            Hon. Esther Salas, U.S.D.J.